FILED

2017 JUL -6  PM 4: 33

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2017 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>      v.<br><br>KAIN KUMAR, M.D.,<br><br>      Defendant. | No. CR 16-00364(B)-PSG<br><br>S E C O N D<br>S U P E R S E D I N G<br>I N D I C T M E N T<br><br>[18 U.S.C. § 1347: Health Care Fraud; 18 U.S.C. § 371: Conspiracy to Pay and Receive Illegal Remunerations for Health Care Referrals; 42 U.S.C. § 1320a-7b(b)(1)(A): Receiving Illegal Remunerations for Health Care Referrals; 21 U.S.C. §§ 841(a)(1), (b)(1)(C), (b)(1)(E), and (b)(2): Distribution of Hydrocodone and Carisoprodol; 18 U.S.C. § 2: Aiding and Abetting and Causing an Act to be Done; 18 U.S.C. § 982(a)(7), 21 U.S.C. § 853: Criminal Forfeiture] |

The Grand Jury charges:

GENERAL ALLEGATIONS

At all times relevant to this Second Superseding Indictment:

1. Defendant KAIN KUMAR, M.D. ("KUMAR") was a physician who owned and operated a medical clinic located at 540 West Palmdale Boulevard, Suite B, Palmdale, California 93551, within the Central District of California. Defendant KUMAR also owned and operated medical clinics in Rosamond and Ridgecrest, California.

2. Star Home Health Resources, Inc. ("Star") was a home health agency located at 1768 Arrow Highway, Suite 105, La Verne, California 91750, within the Central District of California.

3. Elaine C. Lat ("Elaine") was the Chief Operating Officer ("COO") of Star.

4. Errol G. Lat ("Errol") and Thelma C. Lat ("Thelma") were co-owners of Star.

5. Corinne Chavez, also known as "Corinne Chavez-Serrano" ("Chavez"), was a marketer who obtained Medicare patients for Star from referring physicians, including defendant KUMAR.

The Medicare Program

6. Medicare was a federal health care benefit program, affecting commerce, that provided benefits to individuals who were 65 years and older or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Medicare was a "Federal health care program" as referenced in Title 42, United States Code, Section 1320a-7b(b),

1   and a "health care benefit program" as defined by Title 18,

2   United States Code, Section 24(b).

3       7.    Individuals who qualified for Medicare benefits were

4   referred to as Medicare "beneficiaries."  Each beneficiary was

5   given a unique health insurance claim number ("HICN").

6       8.    Health care providers that provided medical services

7   that were reimbursed by Medicare were referred to as Medicare

8   "providers."  To participate in Medicare, providers, including

9   home health agencies ("HHAs") and physicians, were required to

10  submit applications in which the providers agreed to comply with

11  all Medicare-related laws and regulations, including the anti-

12  kickback statute (42 U.S.C. § 1320a-7b(b)), which proscribes the

13  offering, payment, solicitation, or receipt of any remuneration

14  in exchange for a patient referral or referral of other business

15  for which payment may be made by any federal health care

16  program.  If Medicare approved a provider's application,

17  Medicare assigned the provider a Medicare "provider number,"

18  which was used for the processing and payment of claims

19  submitted by the providers.

20      9.    A health care provider with a Medicare provider number

21  could submit claims to Medicare to obtain reimbursement for

22  services rendered to Medicare beneficiaries.

23      10.   Most providers submitted their claims electronically

24  pursuant to an agreement they executed with Medicare in which

25  the providers agreed that: (a) they were responsible for all

26  claims submitted to Medicare by themselves, their employees, and

27  their agents; (b) they would submit claims only on behalf of

28  those Medicare beneficiaries who had given their written

3

authorization to do so; and (c) they would submit claims that were accurate, complete, and truthful.

Home Health Services

11. HHAs who provided home health services to Medicare beneficiaries, including Star, could submit claims for reimbursement to Medicare. Medicare would cover home health services only if, among other requirements, the Medicare beneficiary was homebound; the beneficiary needed skilled nursing services on an intermittent basis, or physical, speech pathology, or occupational therapy services; the beneficiary was under the care of a qualified physician; and a Plan of Care (CMS Form 485) was established by a physician.

12. CMS contracted with private insurance companies to enroll, process, and pay Medicare claims. National Government Services ("NGS") was the contractor that processed and paid Medicare claims for home health services in Southern California during the relevant time period.

13. A Medicare claim for payment for home health services was required to set forth, among other things, the following: the beneficiary's name and unique Medicare identification number; the type of services provided to the beneficiary; the date that the services were provided; and the name and National Provider Identifier ("NPI") of the attending physician who established the plan of care.

Physician Services

14. Physicians who provided services to Medicare beneficiaries, including defendant KUMAR, could submit claims for reimbursement under Part B of the Medicare program.

15. Medicare generally reimbursed a provider for physician services that were medically necessary to the health of the beneficiary and were personally furnished by the physician or the physician's employee under the physician's direction.

16. CMS contracted with regional contractors to process and pay Medicare claims. Noridian Administrative Services ("Noridian") was the contractor that processed claims involving Medicare Part B physician services in Southern California from approximately September 2013 to the present. Prior to Noridian, the contractor for Part B physician services was Palmetto GBA from 2009 to 2013.

Medicare Part D

17. Part D of Medicare subsidized the costs of prescription drugs for Medicare beneficiaries. In order to receive Part D benefits, a Medicare beneficiary was required to enroll in a Medicare drug plan. Medicare drug plans were operated by private companies approved by Medicare. Those companies were often referred to as drug plan "sponsors." Medicare drug plan sponsors were "health care benefit programs," as defined by Title 18, United States Code, Section 24(b). A beneficiary in a Medicare drug plan could fill a prescription at a pharmacy and use his or her plan to pay for some or all of the prescription.

18.   Medicare, through CMS, compensated Medicare drug plan sponsors for prescription drugs provided to Medicare beneficiaries.   Medicare and Medicare drug plan sponsors would only cover prescription drugs if the prescription drugs were medically necessary and indicated for the treatment of a medical condition.

COUNTS ONE THROUGH ELEVEN

[18 U.S.C. §§ 1347, 2]

19.  The Grand Jury hereby repeats, re-alleges, and incorporates by reference paragraphs 1 through 18 of this Second Superseding Indictment as if set forth herein.

A.  THE SCHEME TO DEFRAUD

20.  Beginning no later than in or around February 2011, and continuing through in or around May 2016, in Los Angeles County, within the Central District of California, and elsewhere, defendant KUMAR, together with others known and unknown to the Grand Jury, knowingly, willfully, and with intent to defraud, executed and attempted to execute a scheme and artifice: (a) to defraud health care benefit programs, namely, Medicare and Medicare Part D drug plan sponsors, as to material matters in connection with the delivery and payment for health care benefits, items, and services; and (b) to obtain money from health care benefit programs, namely, Medicare and Medicare Part D drug plan sponsors, by means of material false and fraudulent pretenses and representations and the concealment of material facts in connection with the delivery of and payment for health care benefits, items, and services.

B.  THE MEANS TO ACCOMPLISH THE SCHEME TO DEFRAUD

21.  The fraudulent scheme operated, in substance, as follows:

a.  As a licensed physician, defendant KUMAR prescribed prescription drugs, including controlled substances, without regard to whether the drugs were medically necessary. Defendant KUMAR caused prescriptions for medically unnecessary

7

drugs to be issued by instructing staff at defendant KUMAR's offices to: (1) fill out and sign defendant KUMAR's name on prescriptions; and (2) fill out prescriptions that had been pre-signed by defendant KUMAR.  As a result, defendant KUMAR caused prescriptions to be issued for drugs, including controlled substances, when defendant KUMAR was not present at his clinic, including when defendant KUMAR was travelling outside of the United States.

b.    Defendant KUMAR knew and intended for Medicare beneficiaries to fill prescriptions he had caused to be issued for medically unnecessary drugs at pharmacies, and for pharmacies to then submit false and fraudulent claims to Medicare and Medicare Part D plan sponsors for those medically unnecessary drugs.

c.    When Medicare beneficiaries came to defendant KUMAR's office, oftentimes defendant KUMAR would not personally examine Medicare beneficiaries.  Even when defendant KUMAR did not personally examine Medicare beneficiaries, defendant KUMAR would submit and cause to be submitted false and fraudulent claims for reimbursement to Medicare for physician examinations by him of those Medicare beneficiaries.  For example, defendant KUMAR submitted false and fraudulent claims to Medicare for physician examinations by him that purportedly occurred when defendant KUMAR was travelling outside of the United States and on weekends when defendant KUMAR's offices were closed.

d.    At other times, defendant KUMAR would conduct a brief examination of Medicare beneficiaries, but would submit and cause to be submitted false and fraudulent claims for

reimbursement to Medicare for longer physician examinations by him, which were reimbursed to defendant KUMAR at a higher rate.

e.    Defendant KUMAR would prescribe services for Medicare beneficiaries, including medical imaging and home health services, that defendant KUMAR knew were not medically necessary and would then refer the Medicare beneficiaries to have those medically unnecessary services performed by Medicare providers, including medical imaging and home health companies (including Star).  Defendant KUMAR knew that by prescribing medically unnecessary services, defendant KUMAR was causing the Medicare providers (including Star) to submit false and fraudulent claims to Medicare for such medically unnecessary services.

f.    Defendant KUMAR would profit from prescribing medically unnecessary services to Medicare beneficiaries by receiving kickbacks from the Medicare providers for such referral of Medicare beneficiaries to the Medicare providers. For example, defendant KUMAR received kickbacks from medical imaging and home health companies (including Star) for referring to them Medicare beneficiaries for whom defendant KUMAR had prescribed medically unnecessary medical imaging and home health services.

C.    EXECUTIONS OF THE FRAUDULENT SCHEME

Home Health Services

22.  On or about the dates set forth below, within the Central District of California, and elsewhere, defendant KUMAR, together with others known and unknown to the Grand Jury, aiding and abetting each other, knowingly and willfully executed and attempted to execute the fraudulent scheme described above, by submitting and causing to be submitted to Medicare the following false and fraudulent claims for home health services:

| COUNT | BENE-FICIARY | CLAIM NUMBER | DATES OF SERVICE | DATE SUBMIT-TED | AMOUNT PAID |
|-------|--------------|--------------|------------------|-----------------|-------------|
| ONE | R.S. | 214134001433 07CAR | 1/22/14- 3/12/14 | 5/14/14 | $2,605.71 |
| TWO | S.C.V. | 214143000085 07CAR | 2/3/14- 3/26/14 | 5/23/14 | $2,787.37 |
| THREE | T.N. | 215236002576 07CAR | 5/2/15- 6/26/15 | 8/24/15 | $2,059.22 |

23.  From in or around February 2011 to in or around June 2016, home health providers submitted claims to Medicare for home health services for Medicare beneficiaries that defendant KUMAR referred to the home health providers and Medicare paid approximately $13,456,158 on those claims.

Physician Services

24.  On or about the dates set forth below, within the Central District of California, and elsewhere, defendant KUMAR, together with others known and unknown to the Grand Jury, aiding and abetting each other, knowingly and willfully executed and attempted to execute the fraudulent scheme described above, by

submitting and causing to be submitted to Medicare the following
false and fraudulent claims for physician services purportedly
provided by defendant KUMAR:

| COUNT | BENE-FICIARY | CLAIM NUMBER | DATE OF SERVICE | DATE SUBMIT-TED | AMOUNT PAID |
|-------|--------------|--------------|-----------------|-----------------|-------------|
| FOUR  | D.D. | 551114303866840 | 9/28/14 | 10/30/14 | $91.93 |
| FIVE  | R.W. | 551115020647150 | 12/26/14 | 1/20/15 | $91.93 |
| SIX   | G.W. | 551115096441510 | 12/26/14 | 4/4/15 | $91.93 |
| SEVEN | T.N. | 551115096444630 | 12/26/14 | 4/4/15 | $91.93 |
| EIGHT | C.R. | 551115096442540 | 2/11/15 | 4/4/15 | $122.12 |
| NINE  | D.D. | 551115156826070 | 4/1/15 | 6/5/15 | $66.35 |

25.   From in or around February 2011 to in or around May
2016, defendant KUMAR caused to be submitted claims to Medicare
for physician services purportedly provided by defendant KUMAR
in the amount of $5,488,622 and Medicare paid approximately
$2,953,804 on those claims.

Medicare Part D

26.   On or about the dates set forth below, within the
Central District of California, and elsewhere, defendant KUMAR,
together with others known and unknown to the Grand Jury, aiding
and abetting each other, knowingly and willfully executed and
attempted to execute the fraudulent scheme described above, by
submitting and causing to be submitted to Medicare and Medicare
Part D plan sponsors the following false and fraudulent claims

11

for prescription drugs:

| COUNT | BENE-FIC-IARY | CLAIM NUMBER | DATE | DRUG | AMOUNT PAID |
|---|---|---|---|---|---|
| TEN | S.C. | 137318768891 0000373645911 | 11/27/13 | Hydrocodone-Acetaminophen | $33.65 |
| ELEVEN | K.H. | 1535746985360 12999 | 12/23/15 | Carisoprodol | $8.55 |

27.    From in or around February 2011 to in or around May 2016, based on prescriptions from defendant KUMAR, pharmacies submitted claims to Medicare and Medicare Part D plan sponsors for prescription drugs and Medicare paid approximately $18,033,137 on those claims.

COUNT TWELVE

[18 U.S.C. § 371]

28.   The Grand Jury incorporates by reference and re-alleges paragraphs 1 through 13 of this Second Superseding Indictment as though set forth in their entirety herein.

A.   OBJECTS OF THE CONSPIRACY

29.   Beginning no later than in or around August 2012, and continuing through in or around May 2016, in Los Angeles County, within the Central District of California, and elsewhere, defendant KUMAR, together with co-conspirators Elaine, Errol, Thelma, Chavez, and others known and unknown to the Grand Jury, knowingly combined, conspired, and agreed to commit the following offenses against the United States:

     a.   Knowingly and willfully soliciting and receiving remuneration in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, in violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A); and

     b.   Knowingly and willfully offering to pay and paying any remuneration to any person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A).

B.   THE MANNER AND MEANS OF THE CONSPIRACY

30.   The objects of the conspiracy were carried out, and to be carried out, in substance, as follows:

a.   Co-conspirators Elaine and Chavez developed relationships with certain physicians, including defendant KUMAR, whereby the physicians would refer Medicare beneficiaries to Star to receive home health services, which services Star would then bill to Medicare.

b.   In exchange for the Medicare referrals, Star would pay the referring physicians, including defendant KUMAR, a kickback of approximately $200-$900 for each Medicare beneficiary referred to Star.

c.   Star would also pay a kickback to co-conspirator Chavez for each Medicare beneficiary that certain physicians, including defendant KUMAR, referred to Star.  Star paid approximately $100-$200 to co-conspirator Chavez as a kickback for each Medicare beneficiary that these physicians referred to Star.

d.   In order to pay the kickbacks to co-conspirator Chavez and defendant KUMAR, co-conspirator Elaine would withdraw cash from Star's bank accounts and deposit the cash into the account of co-conspirator Chavez.  Co-conspirator Chavez would keep the portion of the cash that represented her share of the kickback payments and provide the balance of the cash to defendant KUMAR.

e.   In order to keep track of the kickback payments to co-conspirator Chavez and defendant KUMAR, Star maintained password-protected spreadsheets that listed each Medicare

beneficiary referred to Star and the amount paid to co-conspirator Chavez and defendant KUMAR for each such referral.

f.    From in or around August 2012 to in or around May 2016, co-conspirators Elaine, Errol, and Thelma caused Star to bill Medicare, and on the basis of those bills Medicare paid Star a total amount of approximately $8,951,951, for home health services.  Of that amount, at least approximately $4,398,599 was paid based on bills for home health services to Medicare beneficiaries referred to Star as the result of kickback payments to defendant KUMAR.

C.    OVERT ACTS

31.   On or about the following dates, in furtherance of the conspiracy and to accomplish its objects, defendant KUMAR, together with co-conspirators Elaine, Errol, Thelma, Chavez, and others known and unknown to the Grand Jury, committed and willfully caused others to commit the following overt acts, among others, within the Central District of California and elsewhere:

Overt Act No. 1:  On or about February 28, 2013, co-conspirator Chavez withdrew $5,000 in cash from her account at Chase Bank to make kickback payments to defendant KUMAR.

Overt Act No. 2:  On or about March 7, 2013, co-conspirator Chavez withdrew $5,300 in cash from her account at Chase Bank to make kickback payments to defendant KUMAR.

Overt Act No. 3:  On or about July 19, 2013, co-conspirator Elaine withdrew $2,500 in cash from Star's account at Chase Bank to make kickback payments to co-conspirator Chavez and defendant KUMAR.

1    <u>Overt Act No. 4</u>:  On or about March 7, 2014, co-conspirator
2    Chavez withdrew $3,500 in cash from her account at Chase Bank to
3    make kickback payments to defendant KUMAR.
4    <u>Overt Act No. 5</u>:  On or about December 30, 2014, defendant
5    KUMAR referred Medicare beneficiary T.N. to Star, so that
6    defendant KUMAR could receive kickback payments for referring
7    Medicare beneficiary T.N. to Star.

COUNTS THIRTEEN THROUGH FIFTEEN

[42 U.S.C. § 1320a-7b(b)(1)(A)]

32.  The Grand Jury incorporates by reference and re-alleges paragraphs 1 through 13 and 30 of this Second Superseding Indictment as though set forth in their entirety herein.

33.  On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendant KUMAR, together with others known and unknown to the Grand Jury, knowingly and willfully received remuneration, namely, cash in the amounts identified below, drawn on co-conspirator Chavez's account at Chase Bank and provided to defendant KUMAR, which constituted kickbacks to defendant KUMAR for referring patients to Star for home health services, for which payment could be made in whole and in part under a Federal health care program, namely, Medicare:

| COUNT | DATE | AMOUNT |
| --- | --- | --- |
| THIRTEEN | 2/28/2013 | $5,000 cash |
| FOURTEEN | 3/7/2013 | $5,300 cash |
| FIFTEEN | 3/7/2014 | $3,500 cash |

COUNT SIXTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(C); 18 U.S.C. § 2(b)]

34.   The Grand Jury incorporates by reference and re-alleges paragraphs 1 through 5, 21, and 26 through 27 of this Second Superseding Indictment as though set forth in their entirety herein.

35.   On or about April 29, 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendant KUMAR, then a physician licensed to practice medicine in the State of California, while acting and intending to act outside the usual course of professional practice and without a legitimate medical purpose, knowingly and intentionally prescribed and distributed, and willfully caused the prescribing and distribution of, 120 pills containing hydrocodone, then a Schedule II controlled substance, to patient S.L.

COUNT SEVENTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(E); 18 U.S.C. § 2(b)]

36.  The Grand Jury incorporates by reference and re-alleges paragraphs 1 through 5, 21, and 26 through 27 of this Second Superseding Indictment as though set forth in their entirety herein.

37.  On or about November 8, 2013, in Los Angeles County, within the Central District of California, and elsewhere, defendant KUMAR, then a physician licensed to practice medicine in the State of California, while acting and intending to act outside the usual course of professional practice and without a legitimate medical purpose, knowingly and intentionally prescribed and distributed, and willfully caused the prescribing and distribution of, 150 pills containing hydrocodone, then a Schedule III controlled substance, to patient S.C.

COUNTS EIGHTEEN AND NINETEEN

[21 U.S.C. §§ 841(a)(1), (b)(2); 18 U.S.C. § 2(b)]

38.   The Grand Jury incorporates by reference and re-alleges paragraphs 1 through 5, 21, and 26 through 27 of this Second Superseding Indictment as though set forth in their entirety herein.

39.   On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendant KUMAR, then a physician licensed to practice medicine in the State of California, while acting and intending to act outside the usual course of professional practice and without a legitimate medical purpose, knowingly and intentionally prescribed and distributed, and willfully caused the prescribing and distribution of, the following pills containing carisoprodol, a Schedule IV controlled substance:

| COUNT | PATIENT | NUMBER OF PILLS | DATE |
| --- | --- | --- | --- |
| EIGHTEEN | S.L. | 120 | 4/29/15 |
| NINETEEN | K.H. | 120 | 12/7/15 |

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 982(a)(7)]

40.   Pursuant to Rule 32.2(a) Fed. R. Crim. P., notice is hereby given to defendant KAIN KUMAR, M.D. ("KUMAR"), that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 982(a)(7), in the event of defendant KUMAR's conviction under any of Counts One through Fifteen of this Second Superseding Indictment.

41.   Defendant KUMAR shall forfeit to the United States the following property:

a.   Property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of any offense set forth in any of Counts One through Fifteen of this Second Superseding Indictment; and

b.   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph a.

42.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), defendant KUMAR shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as a result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or

1 (e) has been commingled with other property that cannot be

2 divided without difficulty.

FORFEITURE ALLEGATION TWO

[21 U.S.C. § 853]

43.   Pursuant to Rule 32.2(a) Fed. R. Crim. P., notice is hereby given to defendant KAIN KUMAR, M.D. ("KUMAR"), that the United States will seek forfeiture as part of any sentence in accordance with Title 21, United States Code, Section 853, in the event of defendant KUMAR's conviction under any of Counts Sixteen through Nineteen of this Second Superseding Indictment.

44.   Defendant KUMAR shall forfeit to the United States the following property:

a.   All right, title and interest in any and all property, real and personal, constituting or derived from, any proceeds which defendant KUMAR obtained, directly or indirectly, from any such offense;

b.   All right, title and interest in any and all property, real and personal, used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of any such offense; and

c.   To the extend such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs 44 a. and b. above.

45.   Pursuant to Title 21, United States Code, Section 853(p), defendant KUMAR shall forfeit substitute property, if, by any act or omission of the defendant, the property described in paragraph 44, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in

value; or has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/s/
Foreperson

SANDRA R. BROWN
Acting United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

GEORGE S. CARDONA
Assistant United States Attorney
Chief, Major Frauds Section

STEPHEN A. CAZARES
Assistant United States Attorney
Deputy Chief, Major Frauds Section

DIIDRI ROBINSON
Assistant Chief, Fraud Section
United States Department of Justice

ALEXANDER F. PORTER
Assistant United States Attorney
Major Frauds Section

CLAIRE YAN
Trial Attorney, Fraud Section
United States Department of Justice